Madam Clerk, Hall case. Case number 314-0469, Pekin Insurance Company, Adelaide v. Pekin Cement Co., Dallas v. Illinois Cement Company, Appellant v. Benedict Hicks. Please proceed. Thank you. Justices, it's a pleasure to be here and be able to represent Illinois Cement Company in this appeal. I believe that the briefs filed by all of the parties set forth the facts and probably met most of the legal issues. I feel it's necessary just to clarify a couple of things and highlights, and of course I want to answer any questions you may have of me as well. This case originally started, of course, with an underlying action that's still pending in LaSalle County involving an injured worker by the name of Michael Hansen. At a later point, his wife was included for a loss of consortium in an amended complaint that was filed. He was an employee of Perino Plumbing, which had been hired by Illinois Cement Company, the owner of the premises involved, to do some work on the premises, some plumbing work that was going to be done. There were various agreements that were set forth between them, and as part of those agreements, Illinois Cement Company requested, or at least perhaps required, that they be made an additional insurer on all of the various insurance policies of Perino Plumbing. One of those policies, at least, was a commercial liability policy issued by Pekin Insurance, which is a subject matter of this declaratory judgment action. In that, a certificate of insurance was actually given to Illinois Cement Company, and as a result, Perino Plumbing started working on the premises. Mr. Hansen claims that he had an injury while he was on the premises for which this lawsuit was filed. The original lawsuit itself was filed by a local law firm on behalf of Mr. Hansen. It's significant to some of the issues in this matter, and part of not only the briefs but the court record, that Mr. Hansen, because he was employed by Perino Plumbing, had a workers' compensation action, which was also pending at the time. The original complaint, and in fact none of the amended complaints, included any allegations against Perino Plumbing because they were barred by statute to do this because all proceedings involving Mr. Hansen had to be in the industrial commission setting. So the initial complaint was only against Illinois Cement Company with various allegations. The declaratory judgment action was filed by Pekin Insurance after we had both filed, on behalf of Illinois Cement Company, an original answer and affirmative defenses and then a third-party complaint against Perino Plumbing. As the court will be aware, the significance of when those were filed may be at issue in this case. But in any event, it is true that all of the pleadings that were filed in this matter that involve looking outside what we call the eight corners of the documents, the insurance policy and the original complaint, are something which the court would be entitled to do under the Wilson case, which we've cited. What happened when that amended complaint was filed, it was filed by New Counsel in Chicago for representing Mr. Hansen, who I believe it was in that action that they also brought the action on behalf of the wife as well. And it did add some additional allegations. Those allegations, which we believe are very important to the case in this particular one, added derivative liability claims because this was not two contractors involved. It was a contractor who employed Mr. Hansen, who was not named, but instead a property owner being Illinois Cement Company, and reference were made in that amended complaint and then ultimately a second amended complaint, which made a small change, about derivative liability. And while it did not name Perino Plumbing, clearly indicated, we believe, and that's what our brief and our appeal is based upon, is the fact that it alluded to and looked at the potential of coverage under the policy for the vicarious liability of Illinois Cement Company, at least from the defense of the matter until any ultimate decision was made. How are we supposed to infer that from the language of the second amended complaint? The second amended complaint, Your Honor, yes, talks about Illinois Cement Company, some allegations of direct liability, but then talks about derivative liability based upon the restatement of Torts 414, which would be the duty of a property owner not for their own actions, but because they're the owner of the property and therefore responsible for anyone who may be on the premises for what they do that might be negligent. And so that's the difference between this and, of course, getting right to the matter, which, by the way, I believe, Justice Holbrook, you and me are the only people that weren't involved in the United Contractors of this whole group here today. So in any event, I'm fully aware of the United Contractors case and, of course, that's what this is all about concerning the appeal. Does the second amended complaint allege anybody was on the property other than the cement company? No, there's no allegations that there was, say, a secondary contractor of any kind there, Your Honor. Without using the word Carino Plumbing, I don't know how we can infer that that is where the derivative duty arose. Your Honor, and our position is that that would emanate from the third party complaint that was filed, which was filed, in fact, before the declaratory. And as I understand, and of course, Your Honor's- Did Judge Heddle get to the timing of the third party complaint? Yes, he absolutely did, Your Honor. Initially, this case came up for argument, and in those arguments, which are all part of the record, the only thing that Judge Heddle had difficulty with in terms of the original aspect of this before United Contractors was that the- and actually denied summary judgment at that time, before United Contractors- he made the statement that the only thing I see that would indicate we can't look beyond this and look at the third party complaint and see that Carino was part of this was to look at the issue of whether, and that was one of the other arguments made by the plaintiffs in the matter, Pekin Insurance, was that did a written contract ever develop among the parties? The judge found that that was a question of fact and had to be- That count was dismissed. That's exactly it, and I'm getting that, Your Honor. That's not at issue anymore. So that's the only thing he left open when he denied the summary judgment in that respect. At that time, he ruled that the court- and he did look at the third party complaint allegations. Then, when counsel had, of course, United Contractors' decision, they asked for a reconsideration. And at that point, Justice Heddle looked at the matter, he heard arguments from everyone, and actually wanted to see the original complaint in United Contractors so that he could compare it to the complaint that's here. And with all due respect to Judge Heddle, Your Honor, I believe that he felt compelled to make the decision he made in his reading of United Contractors based upon the fact there was not actually a naming of Perino Plummet in the amebic complaint. But under that theory, and I would argue as well here, under that theory, no one who ever would be involved in a proceeding where someone would otherwise have their workers' compensation case and can't name their employer who may be totally responsible for this in the underlying case, if they can't look at some document outside of the contract, something outside the eight corners, then they will never be an additional insured under the language of the Pekin policy. Essentially, they're giving them nothing in terms of the language that they have. That does not appear to be the sense of the courts in most other cases looking at this saying, why don't you first defend the action and essentially say we'll let the chips fall where they may later because the duty to defend, and of course I'm not going to give you a litany of cases that are clear, that first of all, they're bound by the language of their own policy, which says that they're responsible for vicarious liability, but not the sole liability or direct liability of the additional insurer. Well, how do we get to that unless we have a mechanism for looking at that derivative liability and who that might be, and if the plaintiffs can't name the employer of the person who's injured because it's a worker's comp and they're not allowed by statute, and unless we look at some other document, we don't have that. And the way I read United Contractors was that United Contractors had two aspects to it. One, there were two contractors involved there who would normally be considered independent contractors and not responsible for each other's negligence, and there was no reference to the other contractor in that. Here we have, because of the restatement, we have a situation where the property owner under the restatement would or could be responsible for the negligence of someone on the property because they may have similar duties that they have to perform. What negligent act is pled in the second amended complaint that gives rise to this duty of care to the injured employee? Duties of supervision, duties of making sure that their workers would follow the right route and path, have the assistance they needed, those are all pled separately, in addition to a specific pleading that the person was injured on some steps at L&I CEMET. That is part of the underlying case that's in dispute and that L&I CEMET is continuing to fully defend, along with the other allegations. However, in this particular case, we have a situation where when you look at the two complaints together and you look at the circumstances, the way I read United Contractors, with all due respect, was that two issues were on board in terms of that. It was the not naming a party, which in other cases was good enough that they could still look in another document and find them, but also the timing of the allegations because the allegations that were there, and I believe, though I don't know the specific time period, apparently it was substantially following the time that the declaratory judgment action had been filed and even developed that, lo and behold, the law firm filed another amended complaint which just sort of filled in all the gaps to try to get coverage. There's no evidence of that here. In fact, Judge Howell specifically stated that that isn't what I'm finding here. This was filed by a separate law firm. If he can refuse the tender of defense, then the third-party complaint got filed in this case. Your Honor, under that argument, that would mean that there could never be coverage ever because the first thing you have to do... Or additional insurance. That's right. You first have to tender the insurance policy or tender the defense to the insurance carrier. Then they have to make a decision. If we use the argument that Pekin is using now, which is only being used for this case, by the way, is that, well, the moment we deny the tender, then you should have filed your third-party action before then because otherwise our denial of this is our first step. All the cases have basically said instead you look to see if somebody is pleading into coverage, and that's not the situation here. There are a lot of underlying things that were discussed during the arguments, and Judge Howell said, I'm not making a decision and am not basing this upon the fact that I believe either the second law firm that's involved somehow tried to plead into coverage, or, and he said, I'm certainly not indicating that Mr. Getme filed this in order to try to plead into the declaratory judgment coverage, especially in light of the fact that I haven't seen any kind of declaratory judgment complaint because we had ours on file before they did. So I believe in this particular instance, everything militates toward this being not in any way circumventing the decision in the United Contractors, but another fact scenario that demands that the case on a noble basis be ruled upon by your honors in favor of sending this back to the trial court with direction so that we can proceed. We're asking for a defense. We're not asking for indemnification, and we know that that would not occur until the matter was over with. One of the things that I think was bothersome to Judge Howell, he made the reference in the arguments that he thought the indemnification issue, if he ruled and the declaratory judgment was won, we'd still have an indemnification case later. In fact, as the case is bore out, unless this is sent back to the judge, that issue will never be reached because once a decision is made on the declaratory on the issue of defense of the case, which is a lesser thing to show, then there is no indemnification left. Anyway, I'd be glad to answer any other questions, but I believe my time is up. Thank you, Counselor. Thank you. Counselor, are you going to proceed? May it please the Court. Counsel Peter Sargeles on behalf of Pekin Insurance Company, accompanied by Robert Chemers at counsel today. Justice Wright, I want to start with a question that you asked my opponent, and that was can you point to anything in the Second Amendment complaint that shows the negligence of Perino, and he can't. Mr. Giff answered your question by saying the real operative difference in determining coverage is whether or not the subcontractor is named. That's not the question. The question is whether or not. It may be one of the questions, but it's not the only question. It's not the only question, and really the paramount question is, does the complaint allege a negligent act of Perino? Or it could be inferred to Perino. I'm guessing there's people milling about at the cement company's place of business, and I can't honestly tell from the Second Amendment complaint whose negligence gave rise to the civil case injuries. Okay. Well, in United Contractors, the Court found, and it's an opinion that you authored, Justice Wright, the Court found that the failure to name a negligent act was fatal to coverage, and we have the same case here. Now, this case is actually, in my opinion, a little stronger than United Contractors to affirm the trial court. And that is, it's really an interesting case from the standpoint of, he's correct, two different law firms filed different versions of the complaint at different times. If you look at the original complaint, it really gives the game away in this case. You're talking about the original negligence complaint. I am. If you look at the original negligence complaint, what it does is allege the direct negligence of Illinois Cement by spilling the water, and that's the mechanism by which. When moving a tanker truck. Correct. So we have that allegation. Now, Mr. Giff said that another law firm came in and filled in the spaces of the complaint and added more facts. What that law firm did, respectfully, was remove facts. It actually took that allegation out. Now, in the trial court, I did argue that the amended complaints were transparent attempts to plead into coverage, and they were. Now, the real thing here to take away from just, if you're going to honor the. Plead into coverage by acts of Perino, right? I'm sorry, Aaron. I couldn't quite hear you. You said plead into coverage? I believe that removing the allegations of direct negligence against Illinois Cement was an attempt by the underlying plaintiff to secure coverage, in this case for Illinois Cement, because, of course, they want to breach as many insurance policies. Well, it's pleading into negligent acts inferred by Perino. Well, removing the. . . Well, the implication would be the same thing. Right. What you're left with is a reasonable inference that there's some acts by Perino that. . . Well, what they did is remove the allegation to create that doubt, but, of course. . . That's right. Correct. You can do it either affirmatively or omittingly. Right. Okay. Right. All right. I don't think that there's any, really, disagreement as to what the certificate of insurance implies here. And in the trial court, Pekin and Illinois Cement agreed that the certificate of insurance. . . Mr. Giff discussed it at the beginning of his argument. What we agreed was that the certificate of insurance by itself did not secure coverage for Illinois Cement under the Pekin policy. What they had to do was go beyond that. If there's any questions on that point, I'm happy to answer it. But I'll direct the court to pages 10 and 11 of our brief. I think we fully fleshed that out. The case law is pretty strong on that point. Another point is what materials can the court, outside of the eight corners, the insurance policy and the Second Amendment complaint, can we look at? Illinois Cement is urging the court to look at their third-party complaint. Justice Wright, you were correct when you said the third-party complaint was filed only 10 days after the declination of coverage. The document is self-serving just as the third-party amended complaint in United Contractors was self-serving. The court shouldn't really look to that. Mr. Giff relies upon Pekin v. Wilson for his argument. Can I focus on a fact? Of course. You said the third-party complaint was filed 10 days?  The denial? The denial of coverage. Okay. I think it's 90 days. Are you certain? You know, I can look. I think Pekin's letter denying coverage was April 6th, and the motion for leave to file a third-party complaint was July 26th, 2011. I stand corrected. And the third-party complaint wasn't filed until August. I stand corrected. So I just wanted to make sure I'm not wrong on the facts. No, I stand corrected. You're right. Illinois Summit is urging the court to look at Pekin v. Wilson for its proposition that you should look to the third-party amendment complaint. And Pekin v. Wilson was really an entirely different case from this case. In that case, the Supreme Court was dealing with a motion for judgment on the pleadings, and it looked to affirmative defenses filed by the underlying plaintiff that said, I struck the defendant out of self-defense. Now, the Supreme Court called it unusual and compelling circumstances. They looked at that complaint, the affirmative defenses, because if they wouldn't, the plaintiff would have pled himself out of court if he came in and said, I struck the plaintiff. And there were clear and compelling circumstances to look at that complaint. Here there was nothing, and this is what shouldn't be lost in this argument. There is nothing stopping Hansen from pleading that he was injured by an act of perino. That's not what he's done here. What he's done is allege that he was injured by an act that was caused by Illinois Summit. There's just nothing in the complaint that would lead this court to find that there is vicarious liability, which is what I think everyone in this room agrees is the only thing that's covered by the additional insured endorsement. Well, what is available to Hansen? Perino is his employer. This is a cop coverage issue, am I correct? He would have a cop. He's his employer. Correct. But nothing stops him from pleading in the complaint, Illinois Summit, you're responsible for Perino's acts. What he did in the original complaint was pinpoint an act of Illinois Summit. And what this additional insured endorsement does not cover is the direct negligence of the purported additional insured. And that makes sense, of course, because insurance policies aren't written to cover the acts of, the negligent acts of everyone. In the big picture, what we're saying is ICC is bringing Perino in, okay? Correct. And they don't want acts of Perino to not be covered under Perino's coverage, correct? Correct. Okay. I mean, that's what this is all about. Right. Right. And so what you're saying, in a simplified manner, that's why we have the additional insured coverage. Correct. It's for Perino acts. Correct. Alleged acts of negligence. Correct. The additional insured endorsement covers Perino and anyone else in the world that's entitled to coverage for the acts of Perino. Correct. Right. I mean, that, at least one would argue, is the intent of the parties. Right. And as far as the duty to indemnify, et cetera, of course, I mean, ages of case law says the duty to defend is broader. If there is no duty to defend, there's never a duty to indemnify. Remanding this case back to the trial court to preserve some type of issue that's already been disposed of is not something that this court should do. If there's any questions. Can you touch upon Mr. Giss' argument that if ICC did not qualify as an additional insured, then really they got nothing? I guess ICC wanted to be named as an additional insured to protect itself. Correct. If they get nothing, they're out nothing. Correct? I mean, they didn't pay for this policy. They did not pay for this policy. No. They required Perino to pay for an additional insured policy to protect ICC. Correct. For the negligent acts of Perino. Of Perino. Correct. But. They have not paid a premium. They're a stranger to this policy. They're really claiming. So how do you respond to that argument? Well, they got nothing. They paid nothing. They paid nothing, and they did get something. They got coverage for the acts of Perino. The only problem is that this case, the underlying case, is not being litigated because of the acts of Perino. It's being litigated because of the acts of Illinois Cement. And under that scenario, they don't get coverage. Can you, again, I'm sorry. Of course. Tell me why you think this case is stronger than United Contractors. I'm not sure you tied that up with a written argument. I think that this case is stronger because if you go back a few complaints in the underlying case, you can actually pinpoint the allegation of direct negligence against the purported additional insured where. Somebody else would use your analysis to say, well, maybe they just felt they couldn't prove that. Maybe the facts didn't bear it out. Maybe that's why the complaint was amended. I understand your argument. Right. It's not necessarily the only conclusion you can draw from the second amendment complaint. Okay. But, again, if you look at only the second amendment complaint, I don't think that you're going to find vicarious liability in that complaint, as Your Honor mentioned earlier. Are there no other questions? Thank you. Counsel. Thank you, Your Honor. Very briefly, I'd like to answer part of that, Your Honor. Counsel asked, or you asked about the Wilson. He talked about the Wilson case and said Wilson is different because that was a self-defense case. What the Supreme Court said was you wouldn't expect somebody to be pleading the self-defense argument because that doesn't help their case. In the Hansen case, that's why the Wilson case is the perfect one for this one because in the Hansen case here, he's already got all of his workers' compensation. There's no reason for him to now argue in a case against ICC. By the way, a lot of this negligence is really that of Perino Plumbing, so counsel saying he could have put that in the complaint and then we would be an additional insurer on that, that's not realistic. It's not going to happen. They don't name the parties in those particular cases. Now, if I can, you know, again, I'm not here to question the decision in United Contractors, but again, I hearken to the fact that there were particulars in that that are definitely different than this case, one being that there were two contractors who have independent liability as opposed to the restatement of tort that is specifically in our complaint. None of that language was in the other one, and that was important because that allowed this court, if the trial judge felt he could have done it, he felt he couldn't here, look beyond it once the United Contractors case was decided. I believe that the tenor of the decision in the United Contractors is that we looked at the facts of that case and two things were there. One, there was absolutely nothing to connect the liability of those other contractors involved in here because it was never named in it, so we don't even know who they're talking about, as opposed to the restatement of tort aspect here. And it was filed so long after the others, there must have been a pleading in the coverage. Again, I don't know the underlying of how long that was there. I can only state here that for the first few months of this, before the third-party complaint was filed, the record will show that this case went through, someone took a change from a judge in this case to another judge, it had parties added, it had new attorneys involved in the case, and then all I can say is that we filed our third-party action before there was any declaratory judgment action prepared, filed, or asked to be filed by the other side. So what I would consider the more strict aspect of United Contractors is that's the pleading in the coverage. The problem I have with Consul is that he's saying, well, we can't win that one, so instead we'll argue one of two things. Either really it was Consul in Chicago, the new Consul, they did it, so now we should be punished because they've done that in terms of bringing in Perino-Palmer when they should be, or let's instead go back to the very beginning when there was a denial of the tender. Because, again, and again, not to reiterate anymore, is that nobody would ever be an additional insured and they would win every declaratory judgment if this court rules that the moment they decline a tender you should have already had your matter on file. Because you have to wait until they decline the tender, do some more negotiation to see if they're going to bring you in, and at that point you find your answer and decide who to bring in the case. But I'm just speaking from my experience as a trial lawyer and how I did it in this case, and I guess otherwise it's on me for waiting for a couple of months before that happened with all the things that were happening here. But in any event, I appreciate all of the opportunity to make an argument on behalf of my client. Thank you very much. Thank you, Consul. The court will take this matter under advisement and rule with dispatch. Right now we'll take a brief recess for panel. All right.